*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0359p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DANIEL ALBERT NEWMAN,

> *Petitioner-Appellee,*

> No. 07-1782

*v.*

LINDA METRISH, Warden,

> *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-74582—Arthur J. Tarnow, District Judge.

Argued: July 24, 2008

Decided and Filed: October 6, 2008

Before: MOORE and SUTTON, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ARGUED:** Thomas C. Cameron, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Bradley R. Hall, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Bradley R. Hall, Andrew N. Wise, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellee. Daniel Albert Newman, Kincheloe, Michigan, pro se.

ALDRICH, J., delivered the opinion of the court, in which MOORE, J., joined. SUTTON, J. (pp. 6-9), delivered a separate dissenting opinion.

---

## OPINION

---

ANN ALDRICH, District Judge. The State of Michigan appeals a judgment granting Daniel Albert Newman's application for a writ of habeas corpus on the basis that there was insufficient evidence to support his conviction. Because there was neither direct nor circumstantial evidence placing Newman at the scene of the crime, we affirm.

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1

## I.       Background

### A.       *The crime*

In February of 1992, Henry Chappelear ("Chappelear") was fatally shot during the robbery of his home. Chappelear, a known drug dealer, regularly stored marijuana in his freezer. On the day of the murder, one of Chappelear's friends came to his house, noticed a porch lightbulb removed and smashed on the ground, and entered the house. Inside, the friend saw the open freezer door, discovered Chappelear's dead body, and called the police. (J.A. 707.) Evidence recovered from the scene established that Chappelear was shot by a 12-gauge shotgun and a 9-millimeter handgun.

The day after the homicide, two men found a gym bag by the side of the road that contained a jean jacket, a 9-millimeter handgun, a sawed-off shotgun with tape wrapped around the grip, a ski-mask-type hat, two walkie-talkies, and some gloves. (J.A. 131-37.) The bag and its contents were turned over to the police. Subsequent analysis of the items strongly suggested that they belonged to Newman and had been used in Chappelear's murder.

### B.       *Trial*

Newman was subsequently tried and convicted by a jury for first-degree premeditated murder and felony firearm.

At trial, the prosecution sought to prove that Newman had planned to rob and kill Chappelear by introducing evidence that Newman had intended to rob drug dealers for drugs or money, that Chappelear was a known drug dealer who stored drugs in his freezer, that Newman may have ordered drugs from Chappelear in the past, and that Chappelear's freezer was open and empty after the homicide. In addition, the prosecution attempted to establish a motive by offering testimony that Newman had previously seen Chappelear make a pass at his girlfriend.

The prosecution also introduced evidence supporting an inference that Newman had possessed the murder weapons. First, hairs found on the ski-mask were found to match all visual characteristics of Newman's hair and the hair of one of his dogs. Second, evidence was introduced that a hacksaw had been seized from Newman's home, and there were markings on the shotgun barrel and stock that were not inconsistent with markings that could have been created by a hacksaw. Third, twine found in the gym bag was similar to twine seized from Newman's house. Fourth, debris found inside the gym bag and on the jean jacket chemically and visually matched a container of drywall seized from the car of Newman's girlfriend. Fifth, a firearms expert testified that the spent cartridges and bullet recovered from Chappelear's body matched the 9-millimeter handgun found in the gym bag. Last, testimony established that the gun used in the homicide had been purchased by Newman in 1991, and that a friend of his had seen a similar gun in Newman's home a couple of weeks prior to the homicide. However, the friend could not say for sure that the murder weapon was the same one that she had seen because it was dark and the gun was in a laundry bin.[1]

Although the prosecution offered ample evidence to support an inference that Newman had previously possessed at least one of the murder weapons, the prosecution did not offer any evidence that Newman had used or possessed the weapons on the day of the murder. There was no eyewitness testimony, nor were the police able to recover any latent fingerprints from the crime scene or the items in the gym bag.

---

[1] Although the strength of some of this evidence was called into question by other testimony, at this stage of review, we view all of the evidence in the light most favorable to the prosecution. Accordingly, such testimony is not discussed here.

Newman did not testify.  Instead, he called several witnesses to establish an alibi.

Newman's conviction for first-degree murder was subsequently vacated, and an order of second-degree murder was entered in its stead.

### C.        *Direct appeal and post-conviction relief in state court*

Newman appealed his convictions to the Michigan Court of Appeals, arguing that there was insufficient evidence to sustain his conviction.  In an opinion dated July 2, 1999, the Michigan Court of Appeals denied his appeal because "[v]iewing the evidence in a light most favorable to the prosecution . . . a rational trier of fact could have found beyond a reasonable doubt" all of the elements of the crimes.  (J.A. 679.)

The Michigan Court of Appeals found that the lack of eyewitnesses was not dispositive, stating that the circumstantial evidence presented was sufficient to "support an inference beyond a reasonable doubt that [Newman] either committed the murder himself or aided and abetted in its commission." (J.A. 679.)  Accordingly, the court affirmed Newman's convictions and denied his motion for a rehearing.[2]

Newman was subsequently denied post-conviction relief in the state trial and appellate courts.

### D.        *Application for a writ of habeas corpus*

Having exhausted the remedies available to him in state court, Newman filed an application for a writ of habeas corpus alleging that there was insufficient evidence to establish that he participated in the murder, either directly or as an aider and abettor.[3]  Upon review, the district court found that the Michigan Court of Appeals had failed to consider three important pieces of evidence, that the prosecution had failed to establish a solid chain of inferences at trial, and that there was no evidence placing Newman at the scene of the crime. *Newman v. Metrish*, 492 F. Supp. 2d 721, 730-31 (E.D. Mich. 2007).  Accordingly, the  district court determined that the Michigan Court of Appeals had not reasonably applied the standard articulated in *Jackson v. Virginia*, noting that although the facts relied on by the court of appeals "may have supported a 'reasonable speculation' that [Newman] participated in the murder," they did "not amount to proof beyond a reasonable doubt." *Id.* at 729, 732.  Thus, the district court unconditionally granted Newman's application for a writ of habeas corpus.

## II.    **Standard of Review**

In reviewing a district court order granting an application for a writ of habeas corpus relief, we review legal conclusions *de novo*. *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005).  Although we generally review the district court's findings of fact for clear error, we review de novo "when the district court's decision in a habeas case is based on a transcript from the petitioner's state court trial, and the district court thus makes no credibility determination or other apparent finding of fact." *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006) (quotation omitted).

Newman's application is governed by the Antiterrorism and Effective Death Penalty Act, codified at 28 U.S.C. § 2254(d), which provides that his application for a writ of habeas corpus:

---

[2] Newman raised other arguments before the Michigan Court of Appeals which are not at issue here.

[3] Newman's application raised other grounds for relief that are not at issue here.

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d) (emphasis added).

At issue here is whether the decision of the Michigan Court of Appeals involved such an "unreasonable application" of federal law. A district court may not issue a writ upon concluding only that the state court applied the law erroneously or incorrectly. *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "Rather, that application must also be unreasonable," meaning that the state court "unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 411, 413.

## III.     Discussion

At issue here is whether the Michigan Court of Appeals unreasonably applied clearly established federal law as set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, habeas relief is warranted "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. In considering whether there was sufficient evidence for any rational trier of fact to find proof beyond a reasonable doubt as to every element of the crime, we consider all of the evidence in the light most favorable to the prosecution. *Id.* at 319.

The *Jackson* standard is as easy to articulate as it is difficult to apply. Where there is only circumstantial evidence available, as in the instant case, this ineffable standard is especially challenging, and even more so when that evidence supports a host of permissible inferences.

As a starting point, we note that "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (quotation omitted). In *Johnson*, we found Johnson's conviction to be fully supported by circumstantial evidence where (1) he had been angry with the victim and was the last known person to see her alive, (2) her body was found near an off-road trail that Johnson had discovered recently, and was near a piece of carpet from Johnson's car, (3) Johnson exhibited a series of erratic and suspicious behaviors after the victim disappeared, and (4) Johnson confessed to the murder several times. *Id.* at 991-92.

Although circumstantial evidence alone can support a conviction, there are times that it amounts to only a reasonable speculation and not to sufficient evidence. *See*, *e.g.*, *Parker v. Renico*, 506 F.3d 444, 452 (6th Cir. 2007) (evidence that Parker was in a car containing guns with men who planned a murder was too speculative to support a finding that Parker constructively possessed the firearm); *Brown v. Palmer*, 441 F.3d 347, 352 (6th Cir. 2006) (finding evidence that Brown was present at the scene and had some acquaintance with the perpetrator insufficient to support a conviction of armed robbery and car-jacking under an aiding and abetting theory); *Fuller v. Anderson*, 662 F.2d 420, 423-24 (6th Cir. 1981) (verdict for felony murder not supported by evidence showing only that Fuller was present at the scene of the arson where evidence did not establish beyond a reasonable doubt that Fuller consciously acted to aid in the arson); *Hopson v. Foltz*, No. 86-1155, 1987 U.S. App. LEXIS 6596, at *5 (6th Cir. May 20, 1987) (evidence insufficient to support conviction of second-degree murder on theory of aiding and abetting where there was no proof "that Hopson acted in pre-concert with [the shooter] to commit the murder or that he said or did anything to support, encourage, or incite the commission of the crime.").

Here, if we consider all of the evidence in the light most favorable to the prosecution, there remains reasonable doubt because we are limited by what inferences reason will allow us to draw. We can infer only that Newman intended to rob *a* drug dealer and knew that Chappelear was a drug

dealer, that a gun previously owned by Newman was used to kill Chappelear, and that a similar looking gun was seen in Newman's home approximately two weeks before the murder. However, the witness who saw the gun said she could not say for sure that it was the same one used in the homicide because the gun was in a laundry bin and it was dark. Further, even assuming that Newman's gun was indeed the one used in the homicide, there was no evidence of what happened to it between that date and the date of the homicide, and we need not speculate as to what might have happened.[4] Although the evidence need not exclude every reasonable hypothesis except that of guilt, it must be enough for any rational trier of fact to have found proof of guilt beyond a reasonable doubt.

Although there is a wealth of information showing that Newman owned the gun, conspicuously absent is any evidence placing Newman at the scene of the crime. There was neither eyewitness testimony, nor were any fingerprints recovered. Without additional evidence placing him at the scene of the crime, there is only a reasonable speculation that Newman himself was present.

## IV.    Conclusion

There is no bright line test to determine when facts amount to only a reasonable speculation and not to sufficient evidence. However, where the evidence taken in the light most favorable to the prosecution creates only a reasonable speculation that a defendant was present at the crime, there is insufficient evidence to satisfy the *Jackson* standard. Accordingly, we conclude that the Michigan Court of Appeals unreasonably applied clearly established federal law and the decision of the district court granting a writ of habeas corpus is affirmed.

---

[4] For example, if the witness had observed the gun in Newman's house only a day before the homicide and had been more certain that it was indeed the same gun as that used in the homicide, there would be a stronger inference that Newman was present. With these hypothetical facts, Newman's petition would more closely resemble those made in cases where circumstantial evidence did satisfy the *Jackson* standard. *See, e.g., Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (rejecting a sufficiency challenge brought by a defendant whose murder conviction was based on circumstantial evidence, including eyewitness testimony placing him near the scene of the crime on the morning of the murder); *Apanovitch v. Houk*, 466 F.3d 460, 488-89 (6th Cir. 2006) (rejecting a sufficiency challenge by a defendant whose murder conviction was based on circumstantial evidence, including evidence that the defendant spoke with the victim about painting her window sills, one of which was used to stab her in the neck approximately eight hours later).

———————————

**DISSENT**

———————————

SUTTON, Circuit Judge, dissenting. There is another way to look at this case. The question at hand is whether, as AEDPA demands, the state courts' affirmance of this conviction amounted to "an unreasonable application" of "clearly established" United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The clearly established federal rule asks not whether we "believe[] that the evidence at the trial established guilt," but "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal quotation marks omitted). And in asking whether the state courts reasonably concluded that "*any* rational trier of fact" fairly could have convicted this defendant, we may rely on circumstantial evidence of guilt. *See United States v. Arnold*, 486 F.3d 177, 181–82 (6th Cir. 2007) (en banc). Ample evidence showed that Newman was the killer.

*Newman Owned One of the Murder Weapons.* Start with the uncontradicted fact that Newman owned one of the two guns used to kill Chappelear. Five months before the murder, he purchased a Ruger 9-millimeter handgun, which conclusively matched at least one of the cartridges found at the crime scene and one of the bullets recovered from Chappelear's body. No evidence introduced at trial showed, or even hinted, that Chappelear did not still own and possess the gun on the day of the murder. And the jury heard evidence that, when viewed in the light most favorable to the prosecution, showed that he still possessed the handgun when Chappelear was murdered. One of Newman's girlfriends, Patricia Mueth, saw a "similar" handgun in his laundry hamper just a week or two before the killing. JA 562–63.

*Evidence Connected the Murderer's Gym Bag to Newman.* The day after the murder, two hunters found an abandoned gym bag that contained all of the tools of the murder. The gym bag not only contained Newman's 9-millimeter handgun, but it also contained other items used by the murderer and linked to Newman: (1) a ski mask with hairs similar to Newman's and the hair on one of his two dogs, (2) a jean jacket besmirched with debris that visually and chemically matched a drywall compound recovered from the car Newman was using on the day police arrested him (Newman was a drywaller) and (3) twine matching twine found in Newman's home.

*Evidence Connected Newman to the Second Murder Weapon.* Inside the gym bag was another link between Newman and the murder. The murderer, the evidence showed, shot Chappelear not just with Newman's handgun but also with a 12-gauge shotgun, and the recovered bag contained a 12-gauge sawed-off shotgun. The murderer had cut the shotgun's wooden stock and iron barrel and had wrapped the handle with duct tape. When the police investigated Newman's home, they discovered duct tape, a hacksaw with wood in the blade's teeth and a pile of wood and iron shavings on a workbench in his garage.

*Newman Knew the Victim.* Newman knew Chappelear and had visited his home at least once in the months before the murder.

*Newman Had a Motive.* Newman's own words offer a plausible motive for the killing or at the least an explanation for his armed presence in Chappelear's home. According to Mueth, Newman told her that he wanted to rob some drug dealers, told her that "he wanted guns, drugs, money, anything that he could use" and implored her "daily" for the names and addresses of potential targets. JA 568. Newman knew one such target, as it turns out. Having apparently bought drugs from Chappelear before, Newman knew that he was a drug dealer, and apparently so did

Chappelear's killer, as the hiding place where Chappelear stored drugs (his freezer) had been left open for some time when his body was found.

*Newman's Alibi Suggested Guilt.*  In claiming that Newman spent the night of the murder at the bar where his new girlfriend (Nancy Leat) worked, Newman's defense team added fuel to the fire.  Several witnesses present at the bar that evening testified that, even though they did not recall whether Newman was present that night, Leat asked them repeatedly to tell police that Newman *was* there.  *Cf. Apanovitch v. Houk*, 466 F.3d 460, 488–89 (6th Cir. 2006) (rejecting sufficiency challenge and reciting the evidence relied on by the state court that included the petitioner's "variety of inconsistent stories about his whereabouts on the night of the murder"); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000) (same).

In the face of this evidence, I am not sure what to say.  Newman owned one of the murder weapons; the other murder weapon—a sawed-off 12-gauge shotgun—was connected to him based on the metal and wood shavings found in his house; both weapons were found in a gym bag that also contained hair, twine and drywall compound that matched items from him, his dog, his house and his car; he knew the victim; he had a motive for robbing the victim and for doing so in well-armed fashion (the victim was a drug dealer); and his blundering alibi was far more suggestive of guilt than innocence.  The majority may be right that the evidence at trial "support[ed] a host of permissible inferences," Maj. Op. at 4—some indicative of guilt, some perhaps not.  But this is the answer to the wrong question, as *Jackson* asks only whether the jury reasonably could have convicted, not whether the evidence supported no other possibility.

At any rate, I am hard-pressed to say what that other possibility is and why this fact pattern *compelled* a jury—or reviewing state court—to acquit, or in the future would compel a state or federal trial judge not even to submit the charge to a jury.  What after all are the "permissible inferences" of innocence or, if you will, non-guilt?  Is it problematic that Patricia Mueth testified only that Newman had a "similar" handgun in his laundry hamper a week or two before the killing?  Once we view the evidence the way *Jackson* commands, Mueth's testimony means one of two things:  either that, just before the murder, Newman still possessed the Ruger 9-millimeter murder weapon he bought five months before the slaying or that, just before the murder, he owned *a second handgun* that was not "significantly different" from the murder weapon, JA 563; *cf. Arnold*, 486 F.3d at 182.  It is the rare defense attorney who would implore a jury to acquit on the ground that his client possessed just two handguns similar to the murder weapon immediately before the murder.

Is it problematic, as the district court concluded, that the prosecution's expert testified that ballistics tests comparing the sawed-off shotgun with shells found at the scene were inconclusive?  While the prosecution could not conclusively determine that the shotgun found in the gym bag (and elsewhere connected to Newman through the metal and wood shavings) fired the shells at the crime scene, no one needed that evidence to convict.  Because the abandoned gym bag, found a day after the murder, already contained one of the verified murder weapons and a ski mask, it hardly required a leap of logic to deduce that the shotgun found in the same gym bag was the second murder weapon.  Unless, that is, the murderer possessed not just two handguns but two shotguns as well—and simply chose to leave the unused shotgun in the gym bag with the used 9-millimeter Ruger while taking the used shotgun with him.  Needless to say, this was not defense counsel's theory of the case.

Is it problematic, as the majority notes, Maj. Op. at 5, that the police did not find Newman's fingerprints at the crime scene?  No.  The murderer's gym bag not only contained two weapons and a ski mask, but it also contained cotton gloves, which would readily explain why no one found Newman's fingerprints at the crime scene.

Is it problematic that the prosecution relied on the existence of matching twine (found in the gym bag) and duct tape (found on the sawed-off shotgun)? Yes, if that had been the only evidence of guilt introduced by the prosecution. But it was not, and the relevance of this evidence was not in its isolation but in its cumulative effect with the other far-more-damning evidence.

While it is not the prosecution's burden to disprove every reasonable hypothesis other than guilt, *see Apanovitch*, 466 F.3d at 488, I cannot identify a coherent theory of acquittal. Did someone borrow or steal Newman's handgun, then place a similar handgun in his laundry hamper, then place a hacksaw and wood and metal shavings matching the other murder weapon in his house, then place matching human hair, dog's hair and drywall compound in the murderer's gym bag and then convince Newman's girlfriend to tell others to support an alibi defense that was not true and easy to contradict? Or perhaps, less nefariously, no one did any of this, and it was all a remarkable string of coincidences. Whichever way you slice it, I see nothing unreasonable in the state court's conclusion that a rational juror could have found Newman guilty beyond a reasonable doubt.

Our most analogous precedents place serious obstacles in front of reaching a contrary conclusion. In *Matthews*, we rejected a sufficiency challenge to a murder conviction where the evidence showed that the defendant knew one of the victims, was seen in the area before the killing and tried to pawn a unique ring belonging to another victim a week later. *See* 319 F.3d at 783–84, 788–89. We held that this evidence sufficed despite an eyewitness's testimony that the person he saw stooped over one of the victims "as if to check him out" within moments of hearing the fatal gunshots was *not* the defendant. *Id.* at 783–84 (internal quotation marks omitted). In *Apanovitch*, we held that, even *without* AEDPA's additional layer of deference, the prosecution met its burden of showing that the defendant committed aggravated murder in the course of attempting to rape the victim. *See* 466 F.3d at 488–89. Circumstantial evidence showed that the defendant, who had been hired by the victim to paint her house, was familiar with the victim's home, "had made statements to others of his desire to have sexual relations with her," spoke with her earlier on the day of the murder, had a scratch on his face after the murder that was "consistent with" being scratched by a fingernail, offered inconsistent stories instead of an "adequate" alibi and (along with roughly a third of the male population) had the same blood type as the perpetrator. *Id.* And although investigators found fingerprints at the scene, none of them belonged to the defendant, nor did any other physical evidence identify him as the culprit. *Id.* at 464.

The majority's explanations for its decision do not overcome these obstacles. While the majority offers several reasons why a rational juror might have found the prosecution's evidence unpersuasive, Maj. Op. at 4–5, it offers nothing to show why *no* rational juror could have found guilt and nothing to show why that conclusion is not just wrong but unreasonable. While the majority acknowledges that circumstantial evidence may suffice by itself to sustain a conviction, *id.* at 4, the only example it offers involved a defendant who *repeatedly confessed* to the murder. *See Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000). While the majority says that the prosecution offered nothing "placing Newman at the scene of the crime," Maj. Op. at 3, I wonder why "placing Newman['s gun] at the scene of the crime" and establishing that it was one of the murder weapons does not do the trick—particularly in view of the other evidence linking Newman to the killer's abandoned gym bag, his acquaintance with the victim and his desire to rob a drug dealer (like the victim).

The majority's other citations simply reaffirm an age-old rule—"mere presence" at the scene of a crime does not establish guilt in a joint criminal enterprise, *see, e.g.*, *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 1981)—but one with no conceivable application here. *Cf. Parker v. Renico*, 506 F.3d 444, 452 (6th Cir. 2007) (holding that "evidence [that] suggested only that [the defendant] was in a car with men who together planned a murder and that guns were in the car" was insufficient to support felon-in-possession-of-a-firearm and felony-firearm convictions); *Brown v. Palmer*, 441 F.3d 347, 349, 352–53 (6th Cir. 2006) (holding that evidence that the defendant was "present at the

scene of the crime," had "a brief relationship with the carjacker" and left the scene after his own car was taken by others was insufficient to support a conviction for aiding and abetting a carjacking); *Hopson v. Foltz*, No. 86-1155, 1987 WL 37432, at *2 (6th Cir. May 20, 1987) (sustaining a sufficiency challenge to a conviction for aiding and abetting murder where the evidence established the defendant's presence at the scene, that he "may have argued with the victim" the day before, "may have known that someone else intended to harm" the victim and may have picked up empty shell casings after the murder).

*Jackson* takes for granted that reasonable minds may differ as to what conclusions a given set of facts will bear. And AEDPA implores federal judges to respect the different reasonable inferences that state-court judges may uphold in reviewing sufficiency challenges to state-court convictions. Because this double dose of deference precludes us from second guessing the jury's decision to convict on this record, I respectfully dissent.