RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DONALD LEE JAMES,

               *Petitioner-Appellant*,

    *v.*

JAMES CORRIGAN, Warden, Chippewa Correctional Facility,

               *Respondent-Appellee*.

No. 22-1507

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:18-cv-10972—David M. Lawson, District Judge.

Argued: October 18, 2023

Decided and Filed: October 26, 2023

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Geoffrey J.H. Block, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, D.C., for Appellant. Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Geoffrey J.H. Block, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, D.C., for Appellant. Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

THAPAR, Circuit Judge. Donald James seeks a writ of habeas corpus. When the Michigan Court of Appeals upheld his conviction, it stated that a weapon tied James to the crime

scene.  No evidence supported this finding.  But when it comes to habeas, even serious errors aren't enough to warrant relief by themselves.  Petitioners need to show a violation of the Constitution or federal law.  Here, James needs to prove the state had insufficient evidence to convict him.  He hasn't, so we affirm.

## I.

### A.

The future looked bright for Adrian and Megan Contreras in 2012.  The year before, they welcomed a baby girl into their family.  A baby boy was on his way.  To top it off, they'd just moved into a new home.  One of Adrian's brothers moved in with them.  Another one liked to crash on the couch.

Things quickly deteriorated.  One night shortly after the Contrerases moved in, Donald James took a ride with his friends Anthony Herald and Jonathan Hickerson.  James picked them up in a silver rental car.  Before hopping in, Hickerson threw a rifle in the trunk.  As they drove around, the three men got high and plotted to rob one of the houses in the neighborhood.  They decided on the Contreras home.  James then drove to a nearby gas station, where Hickerson picked up black ski masks.  But at the last minute, Herald got cold feet.  So James and Hickerson drove him home.

Early the next morning, two armed and masked men invaded the Contreras home while the family slept.  They shot Adrian five times, killing him.  Awoken by the noise, Adrian's two brothers sprang into action.  They grabbed their own guns and returned fire, taking down one of the intruders.  When the mask came off, it was Hickerson.  The other intruder escaped in a silver car.

Between 3 and 4 a.m. that same day, James pulled up to his friends' house in a silver car. James told them he had just attempted a robbery with Hickerson, ran out of ammo, and was chased out of the house.  And he told them that Hickerson had been shot.  James then asked what he should do with his gun.  But his friends told him to leave.

After that, James called Herald.  He told Herald that he'd "left Johnny" and that "we f****d up."  He then drove to Herald's house, where he told Herald that he'd thrown his gun in a lake.

When the police arrived at the Contreras house, they found a cell phone someone had left on the ground.  It started ringing.  The caller ID displayed the name "Donnie."  R. 20-4, Pg. ID 556, 563.  Police also found a black ski mask just two blocks from the Contreras house.  The mask had Donald James's DNA on it.

B.

The state charged James with felony murder, home invasion, assault, and firearm offenses.  At trial, Herald, James's friends, and the surviving Contreras family members testified.  A state scientist testified to the DNA match.  The jury convicted James on all counts.

James appealed to the Michigan Court of Appeals.  He argued there was insufficient evidence to support his conviction.  Among other things, he challenged the trial witnesses' credibility.  And he emphasized that neither the DNA evidence nor the Contreras family's testimony proved that he was the second intruder.

The Court of Appeals rejected this challenge.  In upholding James's conviction, the court found that Herald's testimony was supported by "the location of the weapon."  *People v. James*, No. 322890, 2016 WL 298970, at *2 (Mich. Ct. App. Jan. 21, 2016) (per curiam), *vacated in part sub nom. People v. Hickerson*, 919 N.W.2d 787 (Mich. 2018) (mem.).  And it noted that a "weapon" found near the crime scene had James's DNA on it.  *Id.*

There was just one problem:  no evidence supported these two findings.  Although police recovered Hickerson's and the Contrerases' firearms, they never found the second intruder's gun.  And while police found a ski mask with James's DNA on it, they didn't find his DNA on any weapons.  James flagged these errors in an application to the Michigan Supreme Court, but the court denied his appeal.  *People v. James*, 888 N.W.2d 63 (Mich. 2016) (mem.).

Out of options at the state level, James asked for a writ of habeas corpus in federal court.  Again, he raised a sufficiency challenge.  Again, a court rejected it.  *James v. Bauman*, No.

18-CV-10972 (DML), 2022 WL 1409965 (E.D. Mich. May 4, 2022). While the district court recognized that the Michigan Court of Appeals made some mistakes, those mistakes weren't fatal. The district court assumed the Michigan court meant to say "mask," not "weapon." And since police did recover a mask with James's DNA on it, the district court denied habeas relief.

We granted James a certificate of appealability, letting him appeal his sufficiency-of-the-evidence claim.[1]

II.

James is challenging a state conviction in federal court, so the Antiterrorism and Effective Death Penalty Act (AEDPA) applies. *See generally* 28 U.S.C. § 2254. To prevail under AEDPA, James must meet two requirements. First, he must show that his incarceration violates the Constitution or federal law. 28 U.S.C. § 2254(a). And second, James must prove that the Michigan Court of Appeals made an "unreasonable" error of law or fact. 28 U.S.C. § 2254(d). Because James fails the first prong, we don't address the second.

James tries to prove the first prong through a "sufficiency of the evidence" challenge, so he faces an uphill battle. Evidence is only "insufficient" when, viewing it in the light most favorable to the state, no rational juror would find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317–19 (1979). This is a "nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011).

James's sufficiency challenge rests on one issue: identity. Thus, the question is whether the jury had enough evidence to conclude James was the second masked intruder at the Contreras home. It did. As noted above, the jury heard testimony that three men plotted the home invasion: Hickerson, James, and Herald. Herald bailed, and two people invaded the Contrerases' home the next morning: Hickerson and another masked individual. Police found a mask with Donald James's DNA on it just two blocks from the Contreras house. A phone recovered at the scene received a call from "Donnie" soon after the second intruder fled.

---

[1]In his petition, James also argued the trial court applied the wrong standard to his directed verdict motion. We certified his appeal on that issue, but James didn't raise it in his briefing. So, if it's distinct from his sufficiency claim, it's forfeited. *See Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021).

Just after the crime, James pulled up to his friends' house in a car matching the one that drove away from the crime scene. James somehow knew Hickerson had been shot. And he admitted that he committed a robbery with Hickerson and threw his gun in a lake. Based on this evidence, the jury concluded the second intruder was James.

That conclusion doesn't "fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam). Indeed, this court held that similar evidence was sufficient to prove identity in *United States v. Sherer*, 770 F.3d 407, 412 (6th Cir. 2014). In that case, evidence showed that the defendant associated with and called the other robber around the time of the crime. *Id.* And police found a knit cap near the getaway car with the defendant's DNA on it. *Id.* There wasn't a constitutional violation in *Sherer*, and there isn't one here.

That means James doesn't get habeas relief, whether or not the Michigan Court of Appeals' decision was "reasonable." *See* 28 U.S.C. § 2254(a); *Walter v. Kelly*, 653 F. App'x 378, 392–93 (6th Cir. 2016). The district court correctly denied his petition.

## III.

James raises three arguments to the contrary.[2] None succeeds.

## A.

First, James emphasizes that none of the state's evidence proves he was at the crime scene. It's all "highly circumstantial," he says. Appellant Br. 28. James highlights that: (1) none of the Contrerases saw who was behind the second mask, (2) none of the other witnesses was at the Contreras house, (3) the mask with his DNA on it was found outside the house, and (4) no physical evidence proves he was in the house. Thus, James argues, the jury convicted him on mere "speculation." *Id.* at 28.

This argument fails. Our job in sufficiency cases isn't to engage in "fine-grained factual parsing[s]" between what's a "permissible" inference and what's "mere speculation." *Coleman*,

---

[2]James also makes three arguments about applying AEDPA's standard of review to the Michigan Court of Appeals. But as we just said, AEDPA deference doesn't affect the outcome. Even if we were to review James's sufficiency challenge de novo, it would still fail.

566 U.S. at 655. Rather, our job is to assess whether the jury could "draw reasonable inferences" from the evidence to establish the relevant element of the crime. *Id*. Here, that element is identity, and James's conviction passes this test. The jury had enough evidence to reasonably infer that he was the second intruder. True, none of the evidence *directly* proves this. For example, the state didn't find James's fingerprints inside the Contreras house. But that's okay. States can prove guilt beyond a reasonable doubt using exclusively circumstantial evidence. *E.g.*, *Cooper v. Chapman*, 970 F.3d 720, 732 (6th Cir. 2020); *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000). So James's arguments about "reasonable speculation" and circumstantial evidence fail.

B.

Next, James argues this court has granted relief in cases with even more evidence of guilt than there is here. James specifically cites *Newman v. Metrish*, 543 F.3d 793 (6th Cir. 2008), and *Fuller v. Anderson*, 662 F.2d 420 (6th Cir. 1981). But neither case controls here.

Start with *Newman*. In that case, the court reversed a murder conviction for insufficient evidence. *Newman*, 543 F.3d at 797. The state presented evidence showing (1) the defendant intended to rob drug dealers generally, (2) the victim was a drug dealer, (3) the defendant's gun shot the victim, and (4) witnesses saw what appeared to be the same gun in the defendant's house a few weeks earlier. *Id.* But the state had no evidence putting the defendant at the crime scene. *Id.* Nor was there evidence about what happened to the gun between when it was seen at the defendant's house and the murder weeks later. *Id.*

Contrast that case with this one. James and Hickerson weren't just looking to rob houses in general. They planned to rob the Contreras house in particular. And evidence suggests James was near the house around the time of the crime—he drove by the house less than a day before the robbery. Police also found his DNA near the house on a mask resembling the second intruder's. Not to mention, James admitted to his friend that he was with Hickerson during the robbery.

Moreover, unlike the gun in *Newman*, James's car was accounted for in the time preceding the crime. Hours before the crime, James was in a silver car. Right after the crime,

the second intruder escaped in a silver car.  And shortly after that, James arrived at his friends'
house in a silver car.  Thus, there's less room for reasonable doubt here than in *Newman*.  But
don't take our word for it:  the *Newman* court said as much.  The court said it would have been
more likely to uphold the conviction if the defendant's gun had been spotted the day before the
murder.  *Id.* at 797 n.4.  By *Newman*'s own terms, the jury's inference here is "stronger" than it
was in *Newman*.  *Id.*  Thus, *Newman* doesn't bind us here.

Next, *Fuller*.  There, the court held that mere presence at the scene of a crime could not
prove intent.  *Fuller*, 662 F.2d at 424.  But here, intent isn't at issue.  Nobody disputes that the
second intruder intended to commit crimes.  James disputes identity, not intent.  And because
identity wasn't at issue in *Fuller*, it doesn't affect this case.

## C.

Lastly, James notes that some witnesses' testimony was inconsistent.  While that's true,
inconsistent testimony is a matter of credibility, not sufficiency.  *United States v. Barnett*,
398 F.3d 516, 522 (6th Cir. 2005).  And testimonial credibility is outside the scope of appellate
review.  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  Juries choose which
witnesses and statements to believe, and a court can't substitute its judgments for a jury's.  *Id.*
So James can't repackage his credibility challenges as sufficiency arguments.  *See United States
v. Talley*, 164 F.3d 989, 996–97 (6th Cir. 1999).  The jury was within its proper bounds to credit
the incriminating testimony, even if the testimony sometimes conflicted.  Indeed, we must
presume that's what the jury did.[3]  *Jackson*, 443 U.S. at 326.  So the witnesses' inconsistent
testimony doesn't give legs to James's sufficiency challenge, either.

*             *             *

We affirm.

---

[3]For this reason, we decline James's invitation to defer to the Michigan Court of Appeals, which resolved
certain testimonial inconsistencies in his favor.