*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0015P (6th Cir.)
File Name:  00a0015p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

| | | |
|---|---|---|
| MICHAEL JEFFREY JOHNSON, *Petitioner-Appellant,* | | |
| *v.* | | No. 97-4092 |
| RALPH COYLE, Warden, *Respondent-Appellee.* | | |

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 96-00771—David D. Dowd, Jr., District Judge.

Argued:  February 5, 1999

Decided and Filed:  January 12, 2000

Before:  JONES, NELSON, and BOGGS, Circuit Judges.

———————

**COUNSEL**

**ARGUED:**  Luz V. Lopez-Ortiz, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Michael L. Collyer, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee. **ON BRIEF:** Luz V. Lopez-Ortiz, Linda E. Prucha, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for

Appellant.　Michael L. Collyer, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee.

———————————

## OPINION

———————————

BOGGS, Circuit Judge. An Ohio state-court jury convicted Michael Johnson of two counts of aggravated murder, each with a capital specification, for the death of his sister, Susan Brunst. One capital specification alleged that Johnson killed Brunst with prior calculation and design; the other alleged that he killed her in the course of a kidnapping or rape. The jury convicted Johnson on both counts and recommended a sentence of death. The state court of appeals affirmed the conviction and sentence. *See State v. Johnson*, 1992 WL 328492 (Ohio App. Nov. 4, 1992) (unpublished).

Johnson appealed to the Ohio Supreme Court, which reversed his conviction and remanded the case for a new trial. *See State v. Johnson*, 643 N.E. 2d 1098 (Ohio 1994). The Ohio Supreme Court found that (1) Johnson's previous Florida conviction for second-degree murder was not a conviction for a specific intent crime and, therefore, cannot be an aggravating circumstance upon which a capital specification can be grounded, *id.* at 1103–04; (2) the testimony of three of the four witnesses who testified that Brunst told them about Johnson's previous attempt to rape Brunst was inadmissible hearsay, and admitting it was an abuse of discretion, *id.* at 1104–05; (3) certain statements that were admitted into evidence constituted inadmissible character evidence, *id.* at 1105–06; and (4) a graphic and crude passage in an otherwise admissible letter from Johnson to Brunst was unfairly prejudicial, *id.* at 1106.

Johnson sought rehearing, arguing that the evidence presented at trial was insufficient to support his conviction and that a retrial would thus violate his right against double jeopardy. The Ohio Supreme Court denied rehearing.

specification at Johnson's retrial. This determination is properly made by the Ohio courts, and the parties are free to argue the issue in the forthcoming state proceedings.

## III

Sufficient evidence was presented at trial for a rational jury, viewing all the evidence most favorably for the prosecution, to find beyond a reasonable doubt that (1) Johnson killed Brunst, (2) Johnson killed Brunst with prior calculation and design, (3) Johnson killed Brunst while raping or attempting to rape Brunst, and (4) assuming that Ohio courts would interpret the "restraint of liberty" term of the Ohio kidnapping statute to be satisfied on the facts presented at trial, Johnson killed Brunst while kidnapping or attempting to kidnap her. There is no federal constitutional bar to the state's retrying Johnson for murder or aggravated murder, nor for prosecuting a capital specification predicated on rape and/or kidnapping.[3] The state may not prosecute a capital specification based on Johnson's 1984 Florida conviction. Accordingly, we deny Johnson's habeas petition.

———————————

[3]The magistrate judge asserted that Johnson "is no longer facing a death penalty" because his state case was not affirmed on appeal, citing Ohio Revised Code § 2929.06. J.A. at 21. The district court correctly held that such a conclusion is not based on a federal constitutional issue and, therefore, such a claim is not cognizable in Johnson's habeas proceeding. *Id.* at 71. Whether § 2929.06 prohibits the death penalty in Johnson's case is a matter for the Ohio courts, and we make no ruling on that point. We note the issue to bring it to the parties' attention for the retrial.

No evidence was presented that Brunst was killed, terrorized, or physically harmed anywhere other than at her apartment. There is no way to know if Brunst was killed in her apartment or removed alive and killed elsewhere. Although a rational jury might find the elements of murder and/or aggravated murder without evidence of the exact location of the killing, the same cannot be said for kidnapping, which requires that Brunst's apartment be ruled out as the scene of the murder. There being no evidence for the "purpose" element of kidnapping under either subsection (2) or (3) of Ohio Rev. Code Ann. § 2905.01(A), no rational jury could find beyond reasonable doubt that Johnson committed kidnapping under those subsections.

Therefore, to predicate a capital specification on kidnapping, the state must prove beyond a reasonable doubt that Johnson restrained Brunst's liberty in order to engage in sexual activity, under subsection (4) of of Ohio Rev. Code Ann. § 2905.01(A). We held above that a rational jury could find beyond a reasonable doubt that Johnson raped Brunst. At least one Ohio court has held that the physical restraint incident to rape may constitute the restraint of liberty required for kidnapping. *See State v. Hatton*, 1999 WL 253450, *23 (Ohio Ct. App. April 19, 1999) (unpublished) (holding that the defendant's act of forcing himself on top of the victim constituted a restraint of liberty sufficient to support a kidnapping conviction).[2] We are reluctant to consider this the settled law of Ohio; however, that is a matter for the Ohio courts. We hold that if the Ohio courts allow a conviction for kidnapping on these facts, there is no federal constitutional bar preventing the state from arguing the kidnapping capital

---

[2]To convict a defendant of both rape and kidnapping, Ohio law requires the prosecution to prove "separate animus" for the two crimes, *see* Ohio Rev. Code Ann. § 2941.25, which has not been shown on the evidence in the record. To support the capital specification, it must be possible for a rational jury to find beyond a reasonable doubt, on the evidence viewed most favorably for the prosecution, that Johnson raped *or* kidnapped Brunst. There was no need for the state to prove separate animus because (1) either is sufficient in itself and (2) Johnson was not convicted of either rape or kidnapping.

Johnson filed a habeas corpus petition in federal district court, again arguing that he may not be retried. The magistrate judge recommended denial of the petition. The district court considered Johnson's objections and denied the writ. The district court issued a certificate of probable cause, limited to Johnson's sufficiency-of-the-evidence claim involving the kidnapping and rape charges. We affirm the district court's denial of Johnson's petition.

### I

#### A.  The 1984 Florida Murder

In 1984, Johnson pled guilty to murder in connection with the death of a Florida woman, Denise Hutchinson. There were numerous similarities in the circumstances of the two killings. At trial in the case before us, the prosecution argued that the alleged pattern made it more likely that Johnson killed Brunst.

Johnson lived with Kathy Keller in Pierson, Florida, from 1980 to 1984. Hutchinson was Keller's friend, whom Johnson "treated as a sister" although he was sexually attracted to her. After a fight between Johnson and Keller, Keller moved in with Hutchinson. Johnson felt that Hutchinson was responsible for his break-up with Keller. He fought with Hutchinson, who forbade him to come to her mobile home. On December 29, 1984, Florida police found Hutchinson's body, nude from the chest down, lying in her bed. Her face had been struck repeatedly with an iron skillet. Hutchinson was very drunk when she was killed. She had semen in her vagina, but the quantity recovered was insufficient to determine the blood type of the donor. Johnson eventually confessed to the murder. He was steadily employed, but quit going to work immediately after the murder. Johnson pled guilty to murder in the second degree and was imprisoned in Florida. While in prison, he wrote a letter to his sister, Susan Brunst, referring to her as "a perfect 10" and stating that he found her attractive. *State v. Johnson*, 643 N.E. 2d 1098, 1106 (Ohio 1994).

## B. The Charged Conduct

Johnson was released from prison in 1989 and moved back to Akron, Ohio, where he lived with his mother and younger brother, Thomas Johnson. Johnson's sister, Susan Brunst, also lived in Akron. She was involved with a married man, Ron Cook.

Brunst told several friends that on the Sunday after Thanksgiving, 1989, Johnson tried to rape her in her apartment. The friends testified that according to Brunst, Johnson told her he wanted to "lick her pussy," held a knife to her throat, pulled up her shirt, touched her breasts, and attempted to carry her to the bedroom, but that she was able to talk him out of raping her. After this incident, Brunst told her daughter, Cynthia, not to be alone with Johnson, and Brunst and Cook ceased socializing with him. Johnson later admitted to police that on that Sunday he heard Brunst talking on the telephone to a woman he was interested in, telling her that Johnson had been in prison and that he was kinky. Johnson said that he fought with Brunst and wanted to scare her, but denied that he tried to rape her.

Johnson was treated briefly at Fallsview Psychiatric Hospital in February 1990. Johnson's family apparently attempted to have him committed at that time, but the court released him after three days. Johnson was angry at the family, particularly his brother and Brunst, for trying to commit him, and told his brother that nobody would get away with "putting him away like that."

A woman who lived with Johnson's aunt, Donna Gray, testified that Johnson spent every weekend at Gray's house in Diamond, Ohio, to drive his Jeep on trails there. On May 27, 1990, Johnson took several relatives and friends with him and showed them a trail off of Jones Road, behind the post office, that he had discovered the day before. Brunst's body was eventually found near this trail. Johnson did not visit Gray the weekend that Brunst disappeared.

evidence. Four witnesses testified that Brunst told them of the Thanksgiving Sunday, 1989, rape attempt. The Ohio Supreme Court ruled that the testimony of three of these witnesses was erroneously-admitted hearsay, s*ee Johnson*, 643 N.E. 2d at 1104–05, but held that Cook's testimony fell within the "excited utterance" exception to the hearsay exclusion, *id*. at 1104. However, "'where the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a jury verdict, the Double Jeopardy Clause does not preclude retrial.'" *United States v. Quinn*, 901 F.2d 522, 530 (6th Cir. 1990) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 34 (1988)). Accordingly, for the purposes of this appeal we consider the evidence from all four witnesses. Brunst's body was found nude, and the prosecution also presented evidence that Johnson wrote to Brunst from prison expressing his attraction to her.

Viewing all of the evidence presented at trial in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Johnson killed Brunst during or immediately after raping or attempting to rape her. Allowing the state to argue a capital specification based on rape will not subject Johnson to double jeopardy.

In Ohio, kidnapping is defined as the forceful removal or restraint of another in order to to hold the victim for ransom or as a hostage or shield, to facilitate the commission of a felony, to terrorize or inflict serious physical harm on the victim or another, or to engage in sexual activity against the victim's will. There is no evidence that Johnson sought ransom for Brunst or used her as a shield or hostage. Therefore, no rational jury could have found that Johnson committed kidnapping under subsection (1) of Ohio Rev. Code Ann. § 2905.01(A). However, he may have removed her from her apartment to facilitate killing her or to terrorize or harm her, or he may have restrained her liberty to engage in sexual relations against her will.

the place where he is found or restrain him of his liberty, for any of the following purposes:

 (1) To hold for ransom, or as a shield or hostage;

 (2) To facilitate the commission of any felony or flight thereafter;

 (3) To terrorize, or to inflict serious physical harm on the victim or another;

 (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against his will.

Ohio Rev. Code Ann. § 2905.01(A) ("Kidnapping").

 (A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

 (B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

 (C) "Sexual activity" means sexual conduct or sexual contact, or both.

Ohio Rev. Code Ann. § 2907.01 (in relevant part).

The prosecution presented evidence that Johnson had been convicted of murdering Hutchinson in 1984, that her body was found with semen in the vagina, and that she would not have consented to sexual relations with Johnson, *see Johnson*, 643 N.E. 2d at 1105. Johnson viewed both women as sisters, both had angered him, and in both cases he appears to have reacted with sexual violence toward the source of his anger and rejection. The similarity of the two cases suggests a pattern, which a rational jury might have inferred from the

On Friday, June 1, 1990, Brunst and Cook argued at her apartment. Brunst told Cook that she planned to spend the weekend drunk. She drank and smoked marijuana with a friend that evening, then went to the East Akron Eagles Club, where she had two more drinks and left for home at approximately 11:00 p.m. Johnson entered the Eagles Club with James Westberg about fifteen minutes after Brunst left. The barmaid told Johnson that he had just missed his sister and that she was drunk. Later, Johnson went to the pay phone and, on his return, stated that he got no answer at Brunst's house, but that he was sure she made it home safely and would check on her the next morning. Cook, who was out of town, also tried to call Brunst several times that night. At midnight, Brunst answered. After a brief argument, Cook hung up, but immediately called again. Brunst told Cook that she was alone, that she was going to be sick, and that she had to go. Cook called a third time "almost immediately," but got no answer.

Johnson and Westberg left the Eagles Club in Johnson's red Jeep at 1:00 a.m., when the club closed. Johnson said he wanted to check on his sister, so he drove to her apartment. Johnson went into Brunst's apartment with a Budweiser beer can. While Johnson was inside, Westberg got out of the Jeep and vomited for about ten minutes. Johnson came back outside without his beer, and the two drove to the apartment complex where they both lived. Johnson told Westberg that Brunst was drunk and vomiting, naked, with the door wide open, and referred to her repeatedly as a "stupid bitch." When he pulled up at their apartment building, Johnson did not stop the engine. Johnson was still in the Jeep with the engine running when Westberg entered his apartment. At 4:30 that morning, another neighbor, who was returning home, saw Johnson leaving the apartment complex in his red Jeep. On Saturday, June 2, Johnson did not show up for work. A coworker testified that before that day, Johnson had never missed work.

Cook went to Brunst's apartment at 9:00 a.m. on Saturday, June 2, 1990, and found the door open. He found an address

book and a small jewelry box outside the door, but there was no sign of a struggle. Cook testified that some of the clothes he saw Brunst wearing the day before were there, but that he found only one of the pink socks that she had been wearing. Cook found a Budweiser can in the bedroom. Cook handled many items, cleaned up the vomit around the toilet, and generally spoiled the apartment as a crime scene. An Akron detective interviewed Cook at the apartment that evening.

Akron police interviewed Johnson several times after Brunst was reported missing. On June 3, 1990, Johnson admitted that he had left his beer can at Brunst's apartment. On June 5, Johnson spoke of Brunst in the past tense and told police that although he was not guilty of the murder, he might as well confess and get it over with because his family was trying to slander him. He said that he had learned from his mother and his aunt Donna that Brunst's body had been moved twice; that Brunst had never been in his Jeep; that he killed Brunst for sex, drugs, and money; and that while he was in prison in Florida he discussed committing the perfect crime with Ted Bundy. On June 8, Johnson maintained eye contact with the police officer who was questioning him until he was asked about Brunst. During June 1990, Johnson sold his car, told his landlady that he was moving out, and refused to help his family look for Brunst.

On June 27, 1990, a Portage County deputy sheriff found what later proved to be Brunst's nude body, badly decomposed, near Jones Road in Diamond, Ohio. The deputy coroner concluded that "homicidal violence" was involved. Near the body, police found a pink sock matching the one found at Brunst's apartment, a pair of panties of the kind Brunst wore, and a piece of carpet torn from Johnson's truck. In an attempt to identify the body, Portage County deputy sheriffs interviewed Johnson, who happened to be the first relative they were able to contact. Johnson told the deputies that they might as well charge him because everyone thought that he killed Brunst.

The Ohio Supreme Court held that purposeful killing is not an element of the Florida second-degree murder statute and, consequently, that Johnson's "1984 Florida conviction of second-degree murder was insufficient to prove the R.C. 2929.04(A)(5) aggravating circumstance." *See State v. Johnson*, 643 N.E. 2d 1098, 1103–04 (Ohio, 1994). "Whereas an appellate court on habeas review decides federal law questions de novo . . . , the federal reviewing court is generally bound by state court interpretations of state law." *Caldwell v. Russell*, 181 F.3d 731, 735-36, (6th Cir. 1999) (citing *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983), and *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Accordingly, we defer to the Ohio Supreme Court and hold that there was insufficient evidence to prove the specific intent capital specification.

## D. Sufficiency of the Evidence re: Rape/Kidnapping Capital Specification

Again, under Ohio law, "[i]mposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:"

    . . . .

(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

Ohio Rev. Code Ann. § 2929.04(A) (in relevant part).

No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from

## C. Sufficiency of the Evidence re: Specific Intent Capital Specification

Under Ohio law, "[i]mposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:"

. . . .

(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

Ohio Rev. Code Ann. § 2929.04(A) (in relevant part).

A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

Ohio Rev. Code Ann. § 2901.22(A).

There is no evidence that Johnson killed or attempted to kill more than one person in the case now before us. The statute under which he was previously convicted in Florida states:

The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree . . . .

Fla. Stat. Ann. § 782.04(2) (in relevant part).

On June 29, 1990, Akron detectives again interviewed Johnson. The first thing Johnson said to the officers was "I'm the killer," and he dared them to arrest him. Johnson gave the officers several accounts of the murder, saying he bludgeoned Brunst with a tire iron, then that he stabbed her, and finally that he shot her, referring to Brunst throughout as a "bitch" and a "whore." None of the accounts of the murder itself were plausible in light of the lack of evidence of traumatic injury to the recovered body, although in each case Johnson said that he dumped the body behind the post office in Diamond. On June 30, 1990, Akron police officers arrested Johnson. At his arraignment, Johnson stated that he was tired of it all and just wanted to plead guilty.

## II

Johnson argues that there is insufficient evidence that Brunst was a victim of homicide at all; that even if there is evidence that he killed Brunst, there is insufficient evidence that the killing was a result of prior calculation and design; that there is insufficient evidence that Brunst's death was connected with rape; and that there is insufficient evidence that Brunst's death was connected with kidnapping. Although the Ohio Supreme Court found reversible error in Johnson's trial, and even though that court several times referred to the evidence as "weak" or as "not overwhelming," it stopped short of holding that the evidence was insufficient to support a conviction. *See State v. Johnson*, 643 N.E. 2d 1098 (Ohio 1994).

When a defendant challenges the sufficiency of the evidence to support a conviction, we inquire "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (*en banc*); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

## A.  Sufficiency of the Evidence re: Murder

"No person shall purposely cause the death of another . . . ." Ohio Rev. Code Ann. § 2903.02 ("Murder").  Viewing the evidence most favorably to the prosecution, there is no doubt that a rational jury could have found that Johnson killed Brunst.  Johnson is the last person known to have seen Brunst alive.  He was angry with her just after he saw her.  He sat in his running vehicle rather than enter his apartment when he drove home.  A neighbor saw him leaving home at 4:30 a.m. the morning Brunst disappeared.  Brunst's nude body was found near an off-road trail Johnson had found days before Brunst disappeared.  A piece of carpet from Johnson's Jeep was found near the body.  Johnson, who had a perfect work attendance record, did not show up for work the morning after Brunst disappeared, similar to his behavior after the Hutchinson murder.  Johnson did not visit his aunt in Diamond that weekend, as he had done every weekend for a year.  Johnson sold the vehicle that the piece of carpet was taken from.  Johnson told his landlady he was going to move out and asked to have his security deposit returned.  He began to behave erratically and suspiciously in general.  He confessed to the murder several times.  He referred to his sister in the past tense before she was known to be dead.  He sustained eye contact with detectives until they asked about Brunst. Although circumstantial, this evidence is substantial.  "Circumstantial evidence alone is sufficient to support a conviction, and '[i]t is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt.'" *United States v. Reed*, 167 F.3d 984, 992 (6th Cir. 1999) (quoting *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992)).  The evidence presented against Johnson is certainly sufficient for a rational jury to find beyond a reasonable doubt that he killed Brunst.

## B.  Sufficiency of the Evidence re: Aggravated Murder

"No person shall purposely, and with prior calculation and design, cause the death of another . . . ."  Ohio Rev. Code Ann. § 2903.01 ("Aggravated murder; specific intent to cause

death").[1]  We held above that a rational jury could, on the evidence in the record, find beyond a reasonable doubt that Johnson killed Brunst.  Unless that jury were to find that Johnson killed Brunst on his first visit, while Westberg was waiting outside, it must necessarily find that he returned to do it.  While it is possible that he could have returned with pure motives and, once he was there, killed Brunst in a moment of passion, (1) this does not seem likely, and (2) even if it is possible, a rational jury might find, on the evidence presented, that he returned later to kill her after calculating and forming a plan.

Johnson was mad at Brunst when he and Westberg left her apartment at approximately 1:30 a.m.  He displayed no injuries, and there was no sign of a struggle at Brunst's apartment.  These facts suggest that there was no "triggering event" to ignite Johnson's passions after he returned.  If Brunst was alive when Johnson left her apartment at approximately 1:30 a.m., and he killed her later, it was most likely with "prior calculation and design."

On the evidence presented at trial, a reasonable jury could believe that Brunst was alive when Johnson left at 1:30 a.m., and that he returned intending to kill her.  Therefore, the evidence in the record, viewed most favorably to the prosecution, could lead a rational jury to conclude that, beyond a reasonable doubt, Johnson killed Brunst "with prior calculation and design."  There was sufficient evidence to convict him of aggravated murder.

---

[1] Causing the death of another "while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping[ or] rape," which was alleged in Johnson's indictment, also constitutes aggravated murder.  Ohio Rev. Code Ann. § 2903.01(B).  Because we hold that a rational jury could have found prior calculation and design, which is sufficient to support a conviction for aggravated murder, we need not analyze the rape and kidnapping allegations here. *See infra* at 11-15, for our analysis of these allegations as a capital specification.