RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 18-5991

*v.*

DIMITAR PETLECHKOV,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:17-cr-20344-1—Jon Phipps McCalla, District Judge.

Decided and Filed: May 1, 2019

Before: SUHRHEINRICH, THAPAR, and LARSEN, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Michael J. Stengel, STENGEL LAW FIRM, Memphis, Tennessee, for Appellant.
David Pritchard, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for
Appellee.

_____

**OPINION**

_____

THAPAR, Circuit Judge.  Proper venue in a criminal case is an "essential part[] of a free
and good government."  The Federal Farmer, in 2 *The Complete Anti-Federalist* 230 (Herbert J.
Storing ed. 1981).  The government failed to meet its constitutional obligation to prove venue for
most of the charges it brought against Dimitar Petlechkov.  Accordingly, we affirm in part,
reverse in part, and remand.

I.

FedEx provides shipping discounts to high-volume customers.  In order to obtain such a discount, Dimitar Petlechkov lied to FedEx and claimed he was a vendor for a high-volume shipper.  He used those discounted rates to offer shipping services to third parties, pocketing the profit margin between what he charged the third parties and what he paid FedEx.  He shipped nearly 30,000 packages this way until FedEx finally caught him.

The government charged Petlechkov with 20 counts of mail fraud.  *See* 18 U.S.C. § 1341.  A jury convicted him on each count.  The district court sentenced Petlechkov to 37 months in prison and ordered him to pay approximately $800,000 in restitution.  He now appeals his convictions, sentence, and restitution award.

II.

Petlechkov challenges the sufficiency of the evidence underlying his mail fraud convictions.  On appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To convict Petlechkov of mail fraud, the government had to prove that he devised a scheme to defraud, used the mails in furtherance of that scheme, and intended to deprive the victim of money or property.  18 U.S.C. § 1341; *United States v. Warshak*, 631 F.3d 266, 310 (6th Cir. 2010).  A fraudulent scheme must include a *material* misrepresentation, which is a misrepresentation that could influence the decision of a "person[] of ordinary prudence and comprehension."  *United States v. Jamieson*, 427 F.3d 394, 415–16 (6th Cir. 2005).  Materiality is the only element Petlechkov disputes on appeal.

Petlechkov concedes that he made a misrepresentation but contends that it was not material.  His misrepresentation was simple:  he called FedEx's account manager for General Dynamics—one of FedEx's larger clients—and claimed he was a General Dynamics vendor entitled to its discounted shipping rate.  Soon afterwards, FedEx linked Petlechkov's account to

General Dynamics, and he was able to ship packages at its rate.  All it took was a single phone call.  Petlechkov makes two arguments for why his phone call could not have influenced a "person[] of ordinary prudence and comprehension."  *Id.* at 415–16.  First, he claims vendors were not actually entitled to discounts under General Dynamics's contract with FedEx.  And this leads to his second argument:  that federal law prohibits the unwritten discounts he received.  Thus, according to Petlechkov, the FedEx employees who signed off on his discount request were not ordinary, prudent people—his bald assertion that he was a General Dynamics vendor should not have convinced FedEx to give him a discount.

Petlechkov's arguments fail.  First, whatever discounts the General Dynamics agreement *required* FedEx to provide, nothing in the record suggests that the agreement *barred* FedEx from being more generous than required.  And indeed, FedEx's standard "operating procedure" was to extend a customer's discounts to its vendors.  R. 75, Pg. ID 384–85, 397–98.  Because FedEx had such a policy, an ordinary, prudent employee would follow it.  Thus, Petlechkov's false statement was capable of influencing FedEx's decision.  And indeed, it *actually* influenced FedEx's decision—FedEx gave him a discount that lasted for several years.  The fact that Petlechkov's false statement caused its intended result is strong evidence that it was material.  *See United States v. Bohn*, 281 F. App'x 430, 440 (6th Cir. 2008); *Jamieson*, 427 F.3d at 416.

Petlechkov's second argument fares no better.  He claims that FedEx violated the Sarbanes-Oxley Act by extending him a discount.  *See generally* Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.  And he argues that a person of ordinary prudence would not have granted him a discount that violated federal law.  But Petlechkov neither cites Sarbanes-Oxley nor offers any legal analysis of it, and it is not our job to construct a legal argument for him.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).  Instead, Petlechkov makes a *purely factual* argument.  He relies entirely on the testimony of a FedEx employee, Andrew Newborn.  Thus, Petlechkov's argument turns on interpretation of that testimony.

Newborn did testify that in some circumstances unwritten discounts violate Sarbanes-Oxley.  But he never said that unwritten discounts *like* Petlechkov's—contained in a written agreement but extended to someone not named in that agreement—violated Sarbanes-Oxley.  And more specifically, Newborn never said that Petlechkov's specific vendor discount violated

Sarbanes-Oxley.   Despite Petlechkov's arguments to the contrary, a rational juror could have found his misrepresentation material.

## III.

Next, Petlechkov argues that, even if he is in fact guilty, we should still dismiss the case against him because the government failed to prove that venue was proper in the Western District of Tennessee.

## A.

The government argues we should not reach the merits of Petlechkov's venue objection because he "waived his challenge to venue by failing to raise it pre-trial." Appellee Br. at 10. In doing so, the government's brief bounces back and forth between the concepts of waiver and forfeiture. Though attorneys (and even courts) often use these concepts "interchangeably," they are distinct. *Brenay v. Schartow*, 709 F. App'x 331, 336 n.1 (6th Cir. 2017) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). As the Supreme Court has explained, "forfeiture is the failure to make the timely assertion of a right," while "waiver is the intentional relinquishment or abandonment of a known right." *Olano*, 507 U.S. at 733 (internal quotation marks omitted). The government's brief exclusively uses the term "waiver" rather than "forfeiture," and the government asserts that Petlechkov's attorney "acknowledged to the government that venue was proper." Appellee Br. at 10. So the government does appear to be making a waiver argument.

But the government has not shown that Petlechkov's attorney can singlehandedly waive his client's right to be tried in a proper venue. The Supreme Court has distinguished between "tactical" rights (which can be waived by the defendant's attorney) and "fundamental" rights (which can only be waived by the defendant himself). *Gonzalez v. United States*, 553 U.S. 242, 250–51 (2008); *see also McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018). And as Justice Scalia explained in *Gonzalez*, distinguishing between tactical and fundamental is no easy task. *See Gonzalez*, 553 U.S. at 256–57 (Scalia, J., concurring in the judgment) ("Depending on the circumstances, waiving *any* right can be a tactical decision. . . . I know of no objective criterion for ranking rights.").

But ultimately it does not matter because there is no evidence that *either* Petlechkov *or* his attorney "intentional[ly] relinquish[ed]" Petlechkov's right to proper venue. *Olano*, 507 U.S. at 733. The government relies solely on a purported phone call with Petlechkov's attorney—a conversation that "left [the government] with the impression" that a venue challenge was not forthcoming. R. 75-1, Pg. ID 523. The details of the alleged conversation are not in the record. Petlechkov's attorney testified that he had "no independent recollection of the conversation," *id.* at 532, and the government admitted to the district court that there "was by no means a formal stipulation" on the venue issue. *Id.* at 523. The government, therefore, has not met its burden of proving the "intentional relinquishment or abandonment" of proper venue. *See Olano*, 507 U.S. at 733.

To the extent the government is claiming forfeiture, that argument fails as well. Again, forfeiture "is the failure to make the timely assertion of a right." *Id.* Petlechkov did not object to venue until after the close of the government's proof at trial, and typically venue objections are forfeited if not raised *before* trial. *See* Fed. R. Crim. P. 12(b)(3)(A)(i). But there is an exception to this general rule. Defendants are only required to raise venue objections before trial if they have notice of the alleged venue defect. *Id.* Thus, if a venue defect is not "apparent on the face of the indictment" and the "defendant does not have notice of the defect through other means," then he does not need to object before trial. *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005). In those circumstances, the defendant can presume that the government will offer evidence at trial proving that venue is proper. But if the government fails to meet its burden at trial, then the defendant is free to raise the objection. *Id.*

Here, the government concedes that there was no venue defect apparent on the face of the indictment and does not argue that Petlechkov himself had some other reason to know of a defect before trial. Instead, the government claims the purported concession of venue by Petlechkov's attorney shows that Petlechkov was on notice of a venue defect. The government cites only one case: *United States v. Adams*, 803 F.2d 722, 1986 WL 17714 (6th Cir. 1986) (table). But there, the defendant's attorney "conceded [on appeal] that he knew well before trial" the basis for a venue objection and had failed to raise it. *Id.* at *9. Here, in contrast, Petlechkov's attorney contests that he conceded venue below and does not make any concession on appeal either.

Accordingly, as the government has not shown that Petlechkov waived or forfeited his venue objection, we must address the merits of Petlechkov's venue argument.

B.

The Constitution requires that criminal defendants be tried in the place where they committed their alleged crimes. U.S. Const. art. 3, § 2, cl. 3; *id.* amend. VI. Determining proper venue is a two-step process. If the criminal statute has a specific venue provision, then courts must accept that congressional choice (assuming it is otherwise constitutionally permissible). If not, then courts determine the proper venue based on "the nature of the crime alleged and the location of the act or acts constituting it." *Travis v. United States*, 364 U.S. 631, 635 (1961); *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999).

The government says we should skip to the second step and analyze the "nature of the crime alleged." *Travis*, 364 U.S. at 635. But that is wrong: mail fraud has a specific statutory venue provision. It provides, in pertinent part, that offenses "involving the use of the mails" can be "prosecuted in any district from, through, or into which . . . mail matter . . . moves." 18 U.S.C. § 3237(a). As this circuit has explained, "[a] plain reading of the text" shows "that venue in a mail fraud case *is limited to* districts where the mail is deposited, received, or moves through." *United States v. Wood*, 364 F.3d 704, 713 (6th Cir. 2004) (citing 18 U.S.C. § 3237(a)) (emphasis added).

The government must prove proper venue for each count by a preponderance of the evidence. *United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir. 1992). And in this case, each count was tied to a specific package. Thus, the government had to prove each specific package moved through the Western District of Tennessee. Since the jury found that the government did so, Petlechkov concedes that we can only reverse if no rational juror could have come to that conclusion. *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012); *United States v. Cooper*, 40 F. App'x 39, 40 (6th Cir. 2002).

*Counts 6, 13, and 19*. The evidence showed that the packages underlying these three counts were all sent from Munford, Tennessee, which is in the Western District of Tennessee. The sender for each package was Aser Gruppe International. Aser Gruppe's CEO Stephen

Osborn testified that his company generally shipped its packages from a FedEx drop box in Munford. Though Osborn (understandably) did not have a specific recollection of the three packages at issue, the government does not need to present direct evidence of venue. Instead, the government can prove venue based on a reasonable inference from circumstantial evidence. *United States v. Charlton*, 372 F.2d 663, 664–65 (6th Cir. 1967); 2 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Criminal* § 307. Courts have found proof of venue in mail fraud cases based on general practices and circumstantial evidence like we have here. *See, e.g.*, *United States v. Holt*, 899 F.2d 15, 1990 WL 37613, at *2 (6th Cir. 1990) (per curiam) (table) (finding proof of venue in a mail fraud case based on a reasonable inference from circumstantial evidence, even though the sender did not testify about the packages at issue); *United States v. Martino*, 648 F.2d 367, 400–01 (5th Cir. 1981). Since a rational juror could infer that Osborn followed his general practice and dropped the packages at the FedEx drop box in Munford, a rational juror could have subsequently found that the government proved venue for those Munford-related counts—6, 13, and 19. We affirm Petlechkov's convictions on those counts.

*Counts 1–5, 7–12, 14–18, and 20*. The packages underlying each of these counts were sent from, and delivered to, destinations outside of the Western District of Tennessee. So to prove venue for these counts, the government needed to show that the packages moved through the Western District of Tennessee on the way to their destinations. *Wood*, 364 F.3d at 713.

The government's venue argument for these counts relies on how FedEx's shipping process works. FedEx packages pass through hubs, where employees sort them by destination and then send them on their way. *See* Tony Vieira, *Why Use A Hub and Spoke System*, FedEx (April 16, 2009), https://about.van.fedex.com/blog/why-use-a-hub-and-spoke-system. The only hub mentioned during trial was the one in Memphis, Tennessee, which is in the Western District. But the government presented no evidence tying any particular package to that Memphis hub. Yet, the government argues, the jury could have reasonably inferred that each of the packages moved through it.

But the government slices the record too thin. No witness testified that Memphis was FedEx's *only* hub or even the primary hub. Indeed, the record shows that FedEx has "several

hubs" outside of Memphis, even though they were not specifically named.  R. 75, Pg. ID 411. And unlike Counts 6, 13, and 19, there is no evidence of typical shipping practices, e.g., that FedEx typically sent packages from certain locations through its Memphis hub.  Although the record reflects that FedEx's worldwide headquarters is in Memphis, no witness said that means any particular package moved through FedEx's separate Memphis *hub*.

The government has one final argument that applies only to the packages with international destinations.  According to the government, the only international hub proven at trial was the Memphis hub.  Thus, the government argues, the jury could have inferred that any packages shipped abroad must have moved through Memphis.  If the evidence showed that Memphis was indeed FedEx's *only* international hub, then that would sustain venue for the counts relying on packages with international destinations.  But no one testified that Memphis is the only international hub; a witness just said that it is "*an* international hub."  *Id.* at 414 (emphasis added).  Nor did anyone testify about FedEx's typical shipping procedures for international packages.  So the counts relying on international packages are no different than the others.

In sum, it is *possible* that some of the packages at issue went through the Memphis hub. But that is not enough.  The government must prove venue count-by-count, and to do that it must present enough evidence to allow a rational juror to find venue by a preponderance of the evidence.  *See Wood*, 364 F.3d at 713–14; *United States v. Greene*, 995 F.2d 793, 801–02 (8th Cir. 1993).  No evidence cannot be a preponderance of the evidence.  And there is simply no evidence, direct or circumstantial, that any specific package implicated in these counts ever moved through the Western District of Tennessee.  *Cf. Johnson v. Coyle*, 200 F.3d 987, 994–95 (6th Cir. 2000) (holding that no rational juror could have found the defendant guilty of kidnapping when the government did not present any evidence of kidnapping as defined by state law).  Accordingly, no rational juror could have found that the government proved venue for Counts 1–5, 7–12, 14–18, and 20.  We must dismiss Petlechkov's convictions on these counts.

C.

Petlechkov did not argue that we should dismiss with prejudice—i.e., without giving the government a chance to try again.  And the government did not address the issue either.  But we have the discretion and obligation to explain the effect of our decision.  *See United States v. Taylor*, 487 U.S. 326, 336 (1988).

This issue turns on the Double Jeopardy Clause of the Fifth Amendment.  The Double Jeopardy Clause bars a retrial after an acquittal.  U.S. Const. amend. V; *Evans v. Michigan*, 568 U.S. 313, 318 (2013).  An "acquittal" is "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense."  *Evans*, 568 U.S. at 318.  In contrast, procedural dismissals "unrelated to factual guilt or innocence" do not implicate double jeopardy concerns.  *Id.* at 319.  For instance, if a defendant successfully moves for dismissal based on pre-indictment delay, the Double Jeopardy Clause does not bar another prosecution against him.  *United States v. Scott*, 437 U.S. 82, 95 (1978).

A dismissal on venue grounds does not qualify as an "acquittal" for double jeopardy purposes.  Though venue is a factual issue that the government must prove, it is not an element of the underlying criminal offense.  *United States v. Kaytso*, 868 F.2d 1020, 1021 (9th Cir. 1988).  Accordingly, at least three of our sister circuits have held that a venue dismissal is not an "acquittal."  *Kaytso*, 868 F.2d at 1021; *Haney v. Burgess*, 799 F.2d 661, 663–64 (11th Cir. 1986); *Wilkett v. United States*, 655 F.2d 1007, 1011–12 (10th Cir. 1981) ("Venue is wholly neutral; it is a question of procedure, more than anything else, and it does not either prove or disprove the guilt of the accused.").

This is true even for mail fraud, where the test for venue—that mail moved through the district—resembles a substantive element of the offense.  *See Wood*, 364 F.3d at 710, 713 (citing 18 U.S.C. §§ 1341, 3237(a)).  To prove the substantive offense, the government established that Petlechkov's fraudulent scheme relied on mailing packages, a fact that he does not challenge.  But proving venue required something more.  The government needed to prove *where* those packages went.  In this case, it had to prove that they moved through the Western District of Tennessee.  The government failed to make that showing, but that failure does not change the

*fact* that Petlechkov committed mail fraud. Thus, we are dismissing the seventeen counts because of "reasons required by the Constitution or laws . . . unrelated to factual guilt or innocence." *Scott*, 437 U.S. at 98 n.11. That means a dismissal without prejudice is appropriate.

\* \* \*

We affirm Petlechkov's convictions on Counts 6, 13, and 19, and dismiss all remaining counts without prejudice. We need not address Petlechkov's challenges to his sentence and the restitution award because the district court will need to both resentence Petlechkov and recalculate that award. *See Hughey v. United States*, 495 U.S. 411, 412–13, 419–20 (1990); *Wood*, 364 F.3d at 714.

We AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.